IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SERVICE ELECTRIC CABLEVISION, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. _____ |
| ) | |
| THE CITY OF HAZLETON, ) | |
| ) | |
| Defendant. ) | |

## **COMPLAINT**

Plaintiff Service Electric Cablevision, Inc. ("Service Electric"), by and through their undersigned counsel, allege as follows:

### **Nature Of The Case**

1.     This action seeks declaratory and injunctive relief against the City of Hazleton ("Hazleton") arising out of Hazleton's breach of its contract with Service Electric and violation of Service Electric's rights under the United States Constitution and the Constitution of the Commonwealth of Pennsylvania.

2.     As set forth more fully below, Hazleton entered into a contract with Service Electric in 1987 (the "Contract"). The Contract granted Service Electric an exclusive right to operate a cable television system in Hazleton. Based upon its exclusive rights under the Contract, Service Electric made substantial investments to provide a high quality cable television system in Hazleton. Since 1987, Service Electric has fulfilled each of its obligations under the Contract, including payment of approximately $2 million in fees and taxes to Hazleton.

3.    Hazleton has recently enacted Resolutions purporting to authorize its Mayor to enter into a second cable franchise agreement for Hazleton with another company, NuNet, Inc. ("NuNet").

4.    By this Complaint, Service Electric seeks a declaration:  (i) that Service Electric has an exclusive franchise right to operate a cable television system in Hazleton; (ii) that Hazleton's approval of a second cable franchise in Hazleton impairs the Contract under federal and state law; (iii) that Hazleton's approval of a second cable franchise in Hazleton is an unconstitutional taking under federal and state law; (iv) that Hazleton has breached the Contract under state law; and (v) that any agreement entered into pursuant to this approval is void.

5.    In addition, Service Electric seeks an injunction against implementation by Hazleton of any Resolutions authorizing a second cable franchise or any agreement entered into pursuant to those Resolutions.

## The Parties

6.    Plaintiff Service Electric is a corporation organized under the laws of Pennsylvania which provides cable television and Internet-related services to over 90,000 subscribers in one hundred communities in Pennsylvania.  Service Electric is a successor to Service Electric Cable T.V., Inc., and all references to Service Electric in this Complaint incorporate the actions of its predecessor.

7.    Defendant Hazleton is a Pennsylvania City of the Third Class.

**Jurisdiction and Venue**

8.       This court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343 and 1367.

9.       Venue is proper in the Middle District of Pennsylvania pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2).

**Background**

**A. The 1987 Contract And Service Electric's Exclusive Rights**

10.       Service Electric has operated a cable television system in Hazleton since 1963.

11.       In 1987, Hazleton and Service Electric determined to enter into a contract pursuant to which Service Electric would be granted an exclusive franchise right to operate a cable television system within the municipality of Hazleton.

12.       In order to enter into this contract, Hazleton enacted Ordinance No. 87-22 (the "1987 Ordinance") on September 14, 1987 granting an exclusive franchise to Service Electric. A true and correct copy of the 1987 Ordinance is attached as Exhibit A.

13.       The 1987 Ordinance was, *inter alia*, a condition of a settlement between Hazleton and Service Electric with respect to fees due under prior ordinances. As part of this settlement, Service Electric also paid Hazleton $70,000.00.

14.       Section 6 of the 1987 Ordinance provides that "[w]hen this Ordinance shall have been accepted by the Company, such Ordinance and acceptance shall constitute a contract between [Hazleton] and [Service Electric] for all the uses, services, and purposes set forth in this Ordinance." *See* Exhibit A, at § 6.

15.     Service Electric accepted the 1987 Ordinance in accordance with its terms, and the 1987 Ordinance thus became the Contract between Service Electric and Hazleton.  A true and correct copy of Service Electric's October 8, 1987 letter of acceptance of the 1987 Ordinance is attached as Exhibit B.

16.     In the Contract, Hazleton expressly granted an exclusive franchise to Service Electric because Hazleton had determined that the benefits its residents had already received from Service Electric could best be assured in the future by granting an exclusive franchise to Service Electric.  As the Contract provides:

> Having determined that the Company, through its System, has afforded significant social, educational and entertainment benefits to the public in the Municipality, the Company has provided a high quality of such service, responsive to the needs and desires of residents of the Municipality, and *such service can best be assured by the granting of an exclusive franchise to the Company*; and that the Company has the legal, character, financial, technical and other qualifications to continue to construct, erect, own, operate and maintain the cable television system serving this Municipality, *the Municipality hereby grants unto the Company the exclusive right and privilege to construct, erect, operate and maintain a cable television system* in, under, over, along, across or upon the public streets, highways, sidewalks, rights-of-way and places within the boundaries of the Municipality; to the extent permitted by law.

*See* Exhibit A at § 4 (emphasis added).

17.     The Contract provided that the original term of the franchise shall be for a period of seventeen years, ending on December 31, 2005, with the option for Service Electric to extend the same contract for an additional fifteen year term.  *Id.* at § 5.

18.     The Contract provided that it could not be changed by unilateral action of Hazleton: "Except as may be otherwise provided by State or Federal law, order or regulation, the rights and obligations of Municipality and Company shall be those specified herein and shall

4

not be enlarged, diminished or altered by unilateral action of Municipality during the term of the franchise or renewal thereof." *Id.* at § 6.

### B. Hazleton's Approval Of A Second Cable Franchise

19.     On January 15, 2004, Hazleton enacted Resolution 2004-10 purporting to authorize a cable franchise agreement with NuNet ("NuNet Resolution I"). A true and correct copy of NuNet Resolution I is attached as Exhibit C.

20.     Upon learning of the enactment of NuNet Resolution I, Service Electric promptly acted to ensure that officials of Hazleton understood that Service Electric had an exclusive franchise right to operate a cable television system in Hazleton. *See* January 26, 2004 letter of David B. MacGregor, Esq., counsel to Service Electric, to Christopher Slusser, Esq., Hazleton Assistant City Solicitor. A true and correct copy of the January 26, 2004 letter is attached as Exhibit D. Specifically, Service Electric explained to Hazleton officials that Section 7(a) of the Cable Television Consumer Protection and Competition Act of 1992, P.L. 102-385, 106 Stat. 1483, 47 U.S.C. § 521 *et seq.*, as amended, did not operate to invalidate any exclusive cable television franchises retroactively. *See id.*

21.     By letter dated February 26, 2004, the counsel that represented Service Electric in the negotiations that led to the enactment of the 1987 Ordinance, Martin D. Cohn, Esq., wrote to the Hazleton officials and emphasized the importance of the exclusivity provision in the 1987 Ordinance to Service Electric's decision to invest the funds and resources necessary to construct, maintain and operate a cable television system and subsequent upgrades thereto. A true and correct copy of the February 26, 2004 letter is attached as Exhibit E.

22.     Upon information and belief, Hazleton subsequently determined not to enter into a franchise agreement with NuNet under the terms of NuNet Resolution I.

23.     Nevertheless, on March 11, 2004, without any prior public notice, the Hazleton City Council enacted Resolution 2004-27 ("NuNet Resolution II") purporting to authorize Hazleton to enter into a non-exclusive cable franchise agreement with NuNet.  A true and correct copy of NuNet Resolution II is attached as Exhibit F.

24.     Upon information and belief, the Hazleton City Council determined to enact NuNet Resolution II only after NuNet agreed to indemnify Hazleton for costs associated with litigation by Service Electric to protect its exclusive rights.

25.     Upon information and belief, Hazleton and NuNet either intend to enter into a franchise agreement or have already done so pursuant to NuNet Resolution II, in direct violation of the Contract and Service Electric's rights under federal and state law.

## C.  The Real And Immediate Threat Of Injury To Service Electric

26.     Service Electric's system in Hazleton is worth well in excess of $10 million, and generates approximately $325,000 per month in revenues.

27.     Service Electric will be irreparably injured in loss of good will, customers, and profits if Hazleton carries out its plan.

28.     Absent an order enjoining the award of a second franchise to NuNet (or any other service provider), Service Electric would not be adequately compensated for these losses in an action of law.

## COUNT I

### IMPAIRMENT OF CONTRACT (Federal Law)

29.     Service Electric incorporates by reference paragraphs 1-28 of this Complaint as if the same were fully set forth herein.

30.     Article I, Section 10 of the Constitution of the United States of America prohibits acts of state legislation (including acts of a municipality) that impair the obligations of contracts.

31.     Title 42, Section 1983 of the United States Code provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage" subjects a citizen of the United States "to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" shall be liable to the party injured.

32.     Hazleton's enactment of the NuNet Resolutions approving a second cable franchise in Hazleton impairs the Contract under the Constitution of the United States by eliminating Service Electric's exclusive franchise right to operate a cable television system in Hazleton.

33.     The elimination of Service Electric's exclusive franchise rights constitutes a substantial impairment of the Contract and thwarts the legitimate expectations of Service Electric, in violation of the Contract Clause and 42 U.S.C. § 1983.

WHEREFORE, Service Electric respectfully prays that the Court:

(a) enter a declaratory judgment ordering and decreeing that: (i) the Contract provides Service Electric with an exclusive franchise right to operate a cable television system in Hazleton; (ii) the NuNet Resolutions impair the Contract; and (iii) any agreement entered into pursuant to the NuNet Resolutions is void;

(b) permanently enjoin Hazleton from implementing the NuNet Resolutions and any agreement into which Hazleton and NuNet have entered pursuant to those Resolutions; and

(c) award such other and further relief to Service Electric as the Court may deem equitable, just and proper, including the award of interest, costs, expenses, and attorneys' fees related to this action.

## COUNT II

### IMPAIRMENT OF CONTRACT (Pennsylvania Law)

34.     Service Electric incorporates by reference paragraphs 1-33 of this Complaint as if the same were fully set forth herein.

35.     Article I, Section 17 of the Constitution of the Commonwealth of Pennsylvania provides that no law shall be passed which impairs the obligations of contracts.

36.      Hazleton's enactment of the NuNet Resolutions authorizing a second cable franchise in Hazleton impairs the Contract under the Constitution of the Commonwealth of Pennsylvania by eliminating Service Electric's exclusive franchise right to operate a cable television system in Hazleton.

37.     The elimination of Service Electric's exclusive franchise rights constitutes a substantial impairment of the Contract and thwarts the legitimate expectations of Service Electric, in violation of the Constitution of the Commonwealth of Pennsylvania.

WHEREFORE, Service Electric respectfully prays that the Court:

(a) enter a declaratory judgment ordering and decreeing that: (i) the Contract provides Service Electric with an exclusive franchise right to operate a cable television system in

Hazleton; (ii) the NuNet Resolutions impair the Contract; and (iii) any agreement entered into pursuant to the NuNet Resolutions is void;

(b) permanently enjoin Hazleton from implementing the NuNet Resolutions and any agreement into which Hazleton and NuNet have entered pursuant to those Resolutions; and

(c) award such other and further relief to Service Electric as the Court may deem equitable, just and proper, including the award of interest, costs, expenses, and attorneys' fees related to this action.

## COUNT III

## UNCONSTITUTIONAL TAKING (Federal Law)

38.     Service Electric incorporates by reference paragraphs 1-37 of this Complaint as if the same were fully set forth herein.

39.     The Fifth Amendment of the Constitution of the United States provides that private property shall not be taken for public use, without just compensation. This constitutional limitation is applicable to Hazleton pursuant to the Fourteenth Amendment of the Constitution of the United States.

40.     Title 42, Section 1983 of the United States Code provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage" subjects a citizen of the United States "to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" shall be liable to the party injured.

41.     Pursuant to 47 U.S.C. § 555a(a), Service Electric is unable to obtain just compensation for deprivation of its exclusive franchise rights.

42.     Hazleton's enactment of the NuNet Resolutions authorizing a second cable franchise in Hazleton is an unconstitutional taking of Service Electric's exclusive franchise right to operate a cable television system in Hazleton under the Fifth Amendment and Fourteenth Amendments to the Constitution of the United States and 42 U.S.C. § 1983.

WHEREFORE, Service Electric respectfully prays that the Court:

(a) enter a declaratory judgment ordering and decreeing that: (i) the Contract provides Service Electric with an exclusive franchise right to operate a cable television system in Hazleton; (ii) the NuNet Resolutions constitute an unconstitutional taking of Service Electric's property; and (iii) any agreement entered into pursuant to the NuNet Resolutions is void;

(b) permanently enjoin Hazleton from implementing the NuNet Resolutions and any agreement into which Hazleton and NuNet have entered pursuant to those Resolutions; and

(c) award such other and further relief to Service Electric as the Court may deem equitable, just and proper, including the award of interest, costs, expenses, and attorneys' fees related to this action.

## COUNT IV

### UNCONSTITUTIONAL TAKING ( Pennsylvania Law)

43.     Service Electric incorporates by reference paragraphs 1-42 of this Complaint as if the same were fully set forth herein.

44.     Article I, Section 10 of the Constitution of the Commonwealth of Pennsylvania provides that private property shall not be taken or applied to public use, without authority of law and without just compensation being first made or secured.

45.     Pursuant to 47 U.S.C. § 555a(a), Service Electric is unable to obtain just compensation for deprivation of its exclusive franchise rights.

46.     Hazleton's enactment of the NuNet Resolutions authorizing a second cable franchise in Hazleton is an unconstitutional taking of Service Electric's exclusive franchise to operate a cable television system in Hazleton under the Constitution of the Commonwealth of Pennsylvania.

WHEREFORE, Service Electric respectfully prays that the Court:

(a) enter a declaratory judgment ordering and decreeing that: (i) the Contract provides Service Electric with an exclusive franchise right to operate a cable television system in Hazleton; (ii) the NuNet Resolutions constitute an unconstitutional taking of Service Electric's property; and (iii) any agreement entered into pursuant to the NuNet Resolutions is void;

(b) permanently enjoin Hazleton from implementing the NuNet Resolutions and any agreement into which Hazleton and NuNet have entered pursuant to those Resolutions; and

(c) award such other and further relief to Service Electric as the Court may deem equitable, just and proper, including the award of interest, costs, expenses, and attorneys' fees related to this action.

## COUNT V

## BREACH OF CONTRACT (Pennsylvania Law)

47.     Service Electric incorporates by reference paragraphs 1-46 of this Complaint as if the same were fully set forth herein.

48.     The Contract created by the 1987 Ordinance granting Service Electric an exclusive franchise right to operate a cable television system in Hazleton, and Service Electric's acceptance of the obligations imposed by the 1987 Ordinance, is a valid contract.

49.     Hazleton's enactment of the NuNet Resolutions authorizing a second cable franchise in Hazleton breaches the contractual duties owed by Hazleton to Service Electric under the Contract.

WHEREFORE, Service Electric respectfully prays that the Court:

(a) enter a declaratory judgment ordering and decreeing that: (i) the Contract provides Service Electric with an exclusive franchise right to operate a cable television system in Hazleton; and (ii) Hazleton has breached the Contract by enacting the NuNet Resolutions;

(b) permanently enjoin Hazleton from implementing the NuNet Resolutions and any agreement into which Hazleton and NuNet have entered pursuant to those Resolutions; and

(c) award such other and further relief to Service Electric as the Court may deem equitable, just and proper, including the award of interest, costs, expenses, and attorneys' fees related to this action.

## COUNT VI

### DECLARATORY JUDGMENT (Pennsylvania Law)

50.     Service Electric incorporates by reference paragraphs 1-49 of this Complaint as if the same were fully set forth herein.

51.     Title 42, Section 7533 of the Pennsylvania Consolidated Statutes provides that "[a]ny person under a deed, will, written contract, or other writings constituting a contract, or

whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract or franchise, and obtain a declaration of rights, status, or other legal relations thereunder."

52.     The Contract created by the 1987 Ordinance granting Service Electric an exclusive franchise right to operate a cable television system in Hazleton, and Service Electric's acceptance of the obligations imposed by the 1987 Ordinance, is a valid contract.

53.     Hazleton acted without authority by enacting Resolutions, rather than an ordinance, purportedly providing authority to the Mayor of Hazleton to execute a cable franchise agreement.

WHEREFORE, Service Electric respectfully prays that the Court:

(a) enter a declaratory judgment ordering and decreeing that: (i) the Contract provides Service Electric with an exclusive franchise right to operate a cable television system in Hazleton; (ii) Hazleton acted without authority by enacting a resolution purportedly providing authority to the Mayor of Hazleton to execute a cable franchise agreement; and (iii) any agreement entered into pursuant to the NuNet Resolutions is void;

(b) permanently enjoin Hazleton from implementing the NuNet Resolutions and any agreement into which Hazleton and NuNet have entered pursuant to those Resolutions; and

(c) award such other and further relief to Service Electric as the Court may deem equitable, just and proper, including the award of interest, costs, expenses, and attorneys' fees related to this action.

13



Glen R. Stuart
David B. MacGregor
Kenneth M. Kulak
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA  19103-2921
Voice:  215.963.5000
Fax:  877.432.9652
E-mail:  gstuart@morganlewis.com


Robert S. Sensky
Bruce S. Miller
John M. Gallagher
Laputka, Bayless, Ecker & Cohn, P.C.
2 East Broad Street, 6th Floor
Hazleton PA 18201
Voice: 570.455.4731
Fax:    570.459.0729
E-mail: rssensky@lbec-law.com

Date:  March 23, 2004

# EXHIBIT A

666

AN ORDINANCE NO. 87-21

AMENDING ORDINANCE NO. 86-30 RE-ENACTING ORDINANCE
NO. 87-27 KNOWN AS THE LERTA ORDINANCE

BE IT ORDAINED by the Council of the City of Hazleton, Pennsylvania that
Ordinance No. 86-30 is made retroactive to December 31, 1982.

Passed finally by Council this 14th day of September, A.D., 1987

MAYOR

Attest:

CITY CLERK

AN ORDINANCE NO. 87-22

AN ORDINANCE REQUIRING THAT THE PROVIDING OF CABLE
TELEVISION SERVICE BE AUTHORIZED BY FRANCHISE; GRANTING
A FRANCHISE TO SERVICE ELECTRIC CABLE T.V., INC. A
PENNSYLVANIA CORPORATION, ITS SUCCESSORS AND ASSIGNS,
TO INSTALL, OPERATE AND MAINTAIN A CABLE TELEVISION SYSTEM:
PRESCRIBING TERMS AND CONDITIONS: ALSO PROVIDING
REGULATIONS FOR USE OF THE SYSTEM: AND OTHER LEGAL REQUIREMENTS

BE IT ENACTED AND ORDAINED, AND IT IS HEREBY ENACTED AND OREAINED, AS FOLLOWS:

SECTION 1.  **SHORT TITLE**

This Ordinance shall be known and may be cited as the "Cable Television
Franchise Ordinance."

SECTION 2.  **DEFINITIONS**

For the purposes of this Ordinance, the following terms, phrases, words and
their derivations shall have the meaning given herein.  When not inconsistent
with the context, words used in the present tense include the future, words
in the plural number include the singular number, words in the singular number
include the plural number, words in the singular number include the plural
number, and words in the masculine gender shall include the feminine gender.
The word "shall" is always mandatory and not merely directory.

(a)  "Municipality" is the City of Hazleton, acting through its duly
constituted governing body.

(b)  "Cable Television System" or "System" shall mean any facility or group
of facilities which, in whole or in part, receives, modifies or originates
television, FM radio or other electrical signals for the purpose of transmitting
or distributing such signals by wire, cable or other means to subscribing
members of the public or to selected customers, as herein contemplated.  This
definition shall include those systems which do not occupy or cross over or
under the public ways and places of Municipality.

(c)  "Company" is Service Electric Cable T.V., Inc. its successors and assigns.

(d)  "Person" is any person, firm, partnership, association, corporation,
company or organization of any kind.

SECTION 3.   FRANCISE REQUIRED

From and after the enactment of this Ordinance, no cable television system shall be constructed, installed or operated in the Municipality unless such construction, installation or operation shall first have been authorized by Ordinance of Municipality duly enacted.

SECTION 4.   GRANT OF AUTHORITY

Having determined that the Compnay, through its System, has afforded significant social, educational and entertainment benefits to the public in the Municipality, the Company has provided a high quality of such service, responsive to the needs and desires of residents of the Municipality, and such service can best be assured by the granting of an exclusive franchise to the Company; and that Company has the legal, character, financial, technical and other qualifications to continue to construct, erect, own, operate and maintain the cable television system serving this Municipality, the Municipality hereby grants unto the Company the exclusive right and privilege to construct, erect, operate and maintain a cable television system in, under, over, along, across or upon the public streets, highways, sidewalks, rights-of-way and places within the boundaries of the Municipality; to the extent permitted by law.  Municipality grants Company permission to attach or otherwise affix or install its cables and other equipment to and in the facilities of any public utility even though the same may occupy or cross over or under the public ways and places of Municipality; provided that any requisite permission or consent of such public utility is obtained by Company.

SECTION 5.   FRANCHISE TERM

This grant shall be for a period of seventeen (17) years from January 1, 1988 and ending on December 31, 2005, with the option to renew same for additional fifteen (15) year term.  Exercise of Company's option shall be governed by the procedures, rights and remedies provided in Section 624 of the Communications Act of 1034, 47 U.S.C. Section 151, et seq., as amended by the Cable Communications Policy Act of 1984, Pub. L. 98-549, and as it subsequently may be amended.

SECTION 6.   ACCEPTANCE OF FRANCISE

This grant is made upon the express condition that the Company, within thirty (30) days after written notice is given to the Company that this Ordinance has taken effect and becomes operative, shall file with the City Clerk or other duly authorized official of the Municipality a written acceptance of the same.  When this Ordinance shall have been accepted by the Company, such Ordinance and acceptance shall constitute a contract between the Municipality and the Company for all the uses, services and purposes set forth in this Ordinance.  Except as may be otherwise provided by State or Federal law, order or regulation, the rights and obligations of Municipality and Company shall be those specified herein and shall not be enlarged, diminished or altered by unilateral action of Municipality during the term of the franchise or renewal thereof.  The Company, by its acceptance of the provisions of this Ordinance, binds itself to provide the necessary cable television system and to establish, operate and maintain the local cable television system contemplated in this Ordinance, continuing without substantial interruption except for causes beyond its control until the expiration of the term of this grant.  In the event that said Company fails to file said written acceptance within the time hereinablove specified, this grant shall be of no effect and void.

SECTION 7.   INSTALLATION AND EXTENSION OF SYSTEM

Company shall serve all residents of Municipality except to the extent that low household density, adverse terrain or other factors render providing service impracticable or technically or economically infeasible.  Company's cable television system shall not be required to be installed in, or extend to, areas of Municipality where potential revenues from subscribers to be served therein would produce a return insufficient to justify economically such installation or extension.  If otherwise practicable and technically feasible:

(a)  Service shall be provided at normal installation and monthly service rates to an individual customer whose point of connection is  located within one hundred fifty (150) feet of in-place distribution cable;

(b) Company, at its cost, shall make an extension of its cable system where the number of existing households per linear mile of cable to be passed by the extension equals or exceeds the average number of households passed per linear mile of existing cable plant within Municipality.

(c) In no event shall Company be required to make an extension where the number of existing households to be passed per miles is less than fifty (50). Nor shall Company be required to install or extend its cable system in areas where it cannot obtain necessary rights-of-way over private property at economically feasible cost, or permission to attach its facilities to public utility poles or conduits.

SECTION 8. REGULATORY ACTION

The performance by the Company hereunder is subject to limitations, restrictions, or requirements now existing or which may henceforth be imposed by law, rule, or order of the Federal Communications Commission or other government, board, commission or authority. The Company shall not be deemed in default of any of the requirements of this Ordinance to the extent it acts in compliance with, or refrains from doing anything prohibited by such law, rule or order.

SECTION 9. CONDITION OF STREET OCCUPANCY

(a) All transmission and distribution structures, lines and equipment erected by the Company within the Municipality shall be so located as to cause minimum feasible interference with the proper use of streets, alleys and other public ways, roads and places, and to cause minimum feasible interference with the rights or reasonable convenience of property owners who adjoin any of the said streets, alleys or other public ways, roads and places. The Company shall obtain any required permits prior to construction.

(b) In case of any disturbance of pavement, sidewalk, driveway or other surfacing by Company, Company shall, at its expense and in a manner approved by the Municipality, replace and restore the same in as good condition as before said work was commenced.

SECTION 10. COMPLIANCE WITH STANDARDS

Company's construction and maintenance of the transmission and distribution system shall be in accordance with applicable state and federal laws or regulations now in effect or later enacted regulating or affecting Company's installation or operation.

SECTION 11. COMPANY LIABILITY - INDEMNIFICATION

The Company shall save the Municipality harmless from all loss sustained on account of any suit, judgment, execution, claim or demand whatsoever, resulting solely from the operation of the Company in the construction, operation or maintenance of its system in the Municipality. The Municipality shall notify the Company within ten (10) days after the presentation of any claim or demand, either by suit or otherwise, made against the Municipality on account of any damages or losses as aforesaid resulting from the operations of the Company. Thirty (30) days from the enactment date of this Ordinance, the Company shall furnish satisfactory evidence in writing that it has in force public liability insurance of not less than $250,000.00 for any one person and $500,000.00 for any one accidnet, and property damage insurance of not less than $250,000.00 duly issued by an insurance company or insurance companies authorized to do business in this Commonwealth.

SECTION 12. LANDLORD - TENANT

(a) No landlord shall demand payment from Company for permitting Company to provide cable television service on or within said landlord's property or premises. Provided, however, that such landlord may be entitled to reasonable reimbursement for any direct expenses incurred by him in connection with the installation of cable television service, and to just compensation for any permanent occupation of his property resulting from the installation of Company's facilities therein.

(b) No landlored shall interfere with the installation of cable television facilities upon his property or premises nor shall such landlord discriminate in rental charges, or otherwise, between tenants who receive cable service and those who

do not.  No landlord shall demand or accept payment from any tenant, in any form, for permitting cable television service on or within his property or premises.

(c)  As used in this Section, the term "landlord" means any individual or entity owning, controlling, leasing, operating or managing leased residential premises.

SECTION 13.   <u>FRANCHISE PAYMENTS</u>

Beginning on January 1, 1988, as compensation for the rights conferred upon it by this Ordinance, including the privilege of engaging in the business of operating a cable television system in Municipality, Company shall pay annually to Municipality a fee equal to five percent (5%) of both gross revenues collected by Company from charges for basic cable television service and for optional cable television service rendered to subscribers within Municipality.

"Gross revenues" shall not include charges for or revenues from: any taxes billed to and collected from subscribers; services other than the transmission and distribution of television signals; advertising payments; the leasing of cable channels; furnishing other communications and non-broadcast television services either directly or as a carrier for another party; installation charges and fees for move, reconnections, inspection, repairs or modifications of any installations, any other income derived by the Company.  Payment of such annual fee shall be made not later than March 31 of the year following the calendar year in which the fee accrues. Except for the presently existing Business Privilege Tax imposed by Municipality, such annual fee shall be reduced by the amount of any tax, assessment, fee or other charge imposed, levied made or collected by Municipality upon or from Company for the privilege of engaging in the business of operating a cable television system in Municipality.

"Basic cable television service" shall mean that tier of cable television service to which all users must subscribe in order to obtain cable television service and for which a charge is made.

"Optional cable television service" shall mean the furnishing of television programming for which a per-channel or per-program charge is made additional to that for basic cable television service.

The Company shall send to the City Clerk within thirty (30) days after the close of each quarter, a statement certified by an officer of the Company, with the precise number of subscribers as at the end of the preceding quarter for both basic cable television and optional cable television service.

SECTION 14.   <u>PUBLICATION COSTS</u>

The Company shall assume the cost of publication of this Ordinance as such publication is required by law and shall pay the same upon demand by the Municipality.

SECTION 15.   <u>SEPARABILITY</u>

If any section, subsection, sentence, clause, phrase or portion of this Ordinance, is for any reason held illegal, invalid or unconstitutional by any Court of competent jurisdiction or by any state or federal regulatory agency having jurisdiction, such portion shall be deemed a separate, distinct and independent provision and such holding shall not affect the validity of the remaining portions of this Ordinance.

SECTION 16.   <u>ORDINANCES REPEALED</u>

The following Ordinances are hereby repealed.  Ordinance Nos. 1838 adopted February 28, 1966; 1853 adopted December 30, 1966 and 1958 adopted November 23, 1970.

SECTION 17.   <u>ENACTMENT</u>

The effective date of this Ordinance shall be January 1, 1988.  This Ordinance is hereby duly executed and order into law this        day of September, 1987.

Passed finally by Council this 14th day of September, A.D., 1987

Attest:

_____
CITY CLERK

_____
MAYOR

# EXHIBIT B

02/09/04   14:51   ☎6104328282         S E C V                                        ☑002

RECEIVED OCT - 9 1987

LAW OFFICES OF

## LAPUTKA, BAYLESS, ECKER & COHN
### A PROFESSIONAL CORPORATION

BARTEL E. ECKER
MARTIN D. COHN
BRUCE S. MILLER
BART E. ECKER
THOMAS L. KENNEDY
THEODORE R. LAPUTKA, JR.
CHARLES R. PEDRI
ANDREW J. PRIMERANO

SIXTH FLOOR
FIRST VALLEY BUILDING
HAZLETON, PENNSYLVANIA 18201
455 4731   AREA CODE 717
TELEFAX 717-459-0729

OF COUNSEL
THEODORE R. LAPUTKA, SR.
KENNETH R. BAYLESS

October 8, 1987

Honorable Ralph N. Catino
City Clerk
City of Hazleton
Church and Green Streets
Hazleton, PA   18201

Re:  Service Electric Cable TV Ordinance No. 87-22

Dear Ralph:

This will acknowledge receipt of your letter of October 6, 1987, and
the certified copy of the above Ordinance.

In accordance with Section 6 of the Ordinance, please regard this
letter as the written acceptance of the Ordinance for and on behalf of
Service Electric.

As requested in your letter, this is to inform you that Service
Electric will provide the subscribers in the City of Hazleton with the
same quality and quantity of service as provided in other communities
served by our system, such as Allentown.

I will be back in touch with you within the next several days to
arrange a meeting with the Mayor and you so that I might receive a
fully executed copy of the side agreement terminating the litigation
and the presentation to you of the check of $70,000.00.

Sincerely,

LAPUTKA, BAYLESS, ECKER & COHN, P.C.

Martin D. Cohn

MDC:mnp
cc:  Mr. Hoyt D. Walter

# EXHIBIT C

**RESOLUTION 2004-10**
**(As Amended)**

**RESOLUTION AUTHORIZING THE CITY OF HAZLETON
TO ENTER INTO A <u>NON-EXCLUSIVE</u>[1] CABLE
FRANCHISE AGREEMENT BETWEEN THE CITY
OF HAZLETON AND NUNET, INC.**

**WHEREAS,** the City of Hazleton and NUNET, INC. wish to enter into cable services by NuNet, Inc. to the residence of the City of Hazleton; and

**WHEREAS,** the said Lease is for a period of eight (8) years commencing the date of the execution of the Franchise Agreement, and may be extended two times each for a six (6) year period of time, subject to the City's review and acceptance of the same; and

**NOW THEREFORE, BE IT RESOLVED** by the Council of the City of Hazleton that the Mayor is authorized to execute the aforementioned Cable Franchise Agreement on behalf of the City of Hazleton.

**ADOPTED BY COUNCIL** this 15th day of January 2003.

Presented by _____*Ferry*_____

Seconded by _____*Graham*_____

Ferry _____*Y*_____

Graham _____*Y*_____

Mundie _____*Y*_____

Nilles _____*Y*_____

Yannuzzi _____*Y*_____

**RESOLUTION PASSES 1/15/04**

---

[1] Amended to add the words **"Non-Exclusive"** to the title.

# EXHIBIT D

Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103-2921
Tel: 215.963.5000
Fax: 215.963.5001
www.morganlewis.com



**David B. MacGregor**
215-963-5448
dmacgregor@morganlewis.com

January 26, 2004

**VIA MAIL AND FACSIMILE (570) 788-5494**

Christopher Slusser, Esq.
Assistant City Solicitor, City of Hazleton
782 West Butler Drive
Sugarloaf, PA 18249

Re:     Service Electric Cablevision

Dear Mr. Slusser:

On behalf of our client, Service Electric Cablevision ("SECV"), we are writing to summarize
SECV's position that it has an exclusive franchise to provide cable television service in the City
of Hazleton ("City"). SECV appreciates the time you and Mayor Barletta have spent in
discussions with SECV representatives on this important issue, including your meeting with
Gary Day, Tim Trently, and Rob Sensky on January 23, 2004, and we look forward to speaking
with you shortly regarding your review of the City's legal position. Nevertheless, if the City
chooses not to honor SECV's exclusive contract, then SECV will have no choice but to seek
relief in federal court. The purpose of this letter is to ensure that the City fully understands the
nature of SECV's rights.

As you know, on September 14, 1987, the City enacted an ordinance granting SECV an
exclusive cable television franchise. Section 4 of this ordinance, entitled "Grant of Authority,"
provides that the City "grants unto the Company the *exclusive* right and privilege to construct,
erect, operate and maintain a cable television system in, under, over, along, across or upon the
public streets, highways, sidewalks, rights-of-way and places within the boundaries of the
Municipality, to the extent permitted by law." Ordinance No. 87-21, at 2-3 (emphasis added). In
fact, in recognition of SECV's having "provided a high quality of such service, responsive to the
needs and desires of residents of the Municipality," the City expressly recognized that "such
service can best be assured by the granting of an *exclusive* franchise to the Company[.]" *Id.* The



Christopher Slusser, Esq.
January 26, 2004
Page 2

term of the exclusive right granted by the City is set forth in Section 5 of the Ordinance, which provides in its entirety:

> SECTION 5.   FRANCHISE TERM
>
> This grant shall be for a period of seventeen (17) years from January 1, 1988, and ending on December 31, 2005, *with the option to renew same* for additional fifteen (15) year term. Exercise of *Company's option* shall be governed by the procedures, rights and remedies provided in Section 624 of the Communications Act of 1034 [sic], 47 U.S.C. Section 151, et seq., as amended by the Cable Communications Policy Act of 1984, Pub. L. 98-549, and as it subsequently may be amended.

*See id.* at 3 (emphasis added). Thus, under the express terms of the Ordinance, the City granted SECV an exclusive franchise through December 31, 2005, which may be extended, at SECV's option, through December 31, 2020.

We understand that the City has recently questioned whether the exclusive right it granted to SECV in 1987 still exists as a result of the passage of the Cable Television Consumer Protection and Competition Act of 1992 (the "1992 Cable Act"). In the 1992 Cable Act, Congress amended 47 U.S.C. § 541(a)(1) to provide that "a franchising authority" - such as the City - "may not grant an exclusive franchise and may not unreasonably refuse to award an additional competitive franchise." We also understand that the City has relied in part upon *Cox Cable Communications, Inc. v. United States*, 992 F.2d 1178 (11th Cir. 1993), for the proposition that this amendment to the 1992 Cable Act should be applied retroactively to eliminate any exclusivity in existing cable television franchises.

Notably, after the *Cox Cable* decision, the United States Supreme Court decided *Landgraf v. USI Film Products*, 511 U.S. 244 (1994), which held that a law will only be found to be retroactive where there is a clear expression of intent by Congress. After the *Landgraf* decision, the United States Court of Appeals for the Sixth Circuit concluded that the *Cox Cable* case was wrongly decided. As the Sixth Circuit explained:

> We respectfully disagree with *Cox Cable*, which the Eleventh Circuit decided prior to the Supreme Court's opinion in *Landgraf*. In *Landgraf*, the Court rejected the idea that retroactive application can be inferred from indirect and ambiguous language. Nothing in the language of [section 541(a)(1)] compels retroactive application. Indeed, if the Act is not retroactive, the existence of an exclusive

**Morgan Lewis**
COUNSELORS AT LAW

Christopher Slusser, Esq.
January 26, 2004
Page 3

franchise is an eminently "reasonable" ground to refuse to award
an additional franchisee.  Thus, [arguing that a second franchise
must be awarded because exclusive franchises are not permitted] is
only persuasive if we presume retroactive application - in direct
contravention of the long-standing presumption against
retroactivity which the Supreme Court reaffirmed in *Landgraf.*  If
Congress wished [section 541(a)(1)] to invalidate preexisting
exclusive franchise rights, it could easily have said so.

*James Cable Partners v. City of Jamestown,* 43 F.3d 277, 280 (6th Cir. 1995).  Of course,
Congress did not enact any provision expressly invalidating pre-existing exclusive franchise
rights in the 1992 Cable Act, and no such provision exists today.  We believe *James Cable*
correctly interprets the 1992 Cable Act, and SECV is prepared to protect its rights in court, if
necessary.

We must emphasize that SECV does not take the possibility of litigation against the City lightly.
SECV views its forty-year relationship with the City as a partnership.  Indeed, the City's 1987
Ordinance expressly referenced and recognized the Company's historic contributions,
"afford[ing] significant social, educational and entertainment benefits to the public in the
Municipality[.]"  In return for and reliance on its exclusive right to operate in Hazleton under the
terms of the 1987 Ordinance, SECV has made substantial investments to ensure that the people
of Hazleton can have digital cable, high speed Internet, and other advanced cable television and
communications services (including, in the near future, high definition television ("HDTV")), at
reasonable cost.  Moreover, since 1988 alone, SECV has paid nearly $2,000,000 in franchise fees
and business privilege taxes.  SECV has met its commitments to the City and to the people of
Hazleton, and SECV expects the City to continue to adhere to its own legal obligations.

SECV remains hopeful that the City will reconsider its apparent intent to award an additional
cable television franchise in the City, an action that, if taken, would breach the City's 1987
express award of an exclusive franchise.  We trust that the City will recognize the need to honor
its obligations and avoid the necessity for legal action by SECV to enforce its rights.

If you have any questions about SECV's legal position, please call me or Rob Sensky at your
convenience.

Very truly yours,

*David MacGregor*

David B. MacGregor

**Morgan Lewis**
COUNSELORS AT LAW

Christopher Slusser, Esq.
January 26, 2004
Page 4


c:     Mayor Louis Barletta
       Jack Mundie, Jr., President, City Council
       James Ferry, Sr., Vice-President, City Council
       Joseph Yanuzzi, Member, City Council
       Evelyn Graham, Member, City Council
       Robert Nilles, Member, City Council
       John Keown, Chief Executive Officer, Nunet, Inc.
       Robert Sensky, Esq.

# EXHIBIT E

LAW OFFICES OF
## LAPUTKA, BAYLESS, ECKER & COHN
A PROFESSIONAL CORPORATION
2 EAST BROAD STREET
SIXTH FLOOR
HAZLETON, PENNSYLVANIA 18201-6592

(570) 455-4731
FAX (570) 459-0729
E-mail: info@lbec-law.com

MARTIN D. COHN
BRUCE S. MILLER
BART E. ECKER
ROBERT S. SENSKY
JOHN M. GALLAGHER
JEFFREY C. MAJIKAS
TIMOTHY D. BELT

THEODORE R. LAPUTKA, SR. (RET.)

KENNETH R. BAYLESS
(1920-1994)
BARTEL E. ECKER
(1913-1997)

E-mail: mdcohn@lbec-law.com

February 26, 2004

Mayor Louis Barletta
City Hall
40 North Church Street
Hazleton, PA 18201

Mrs. Evelyn Graham
Mr. Joseph Yannuzzi
Mr. Robert Nilles
Mr. Jack Mundie
Mr. James Ferry
City Hall
40 North Church Street
Hazleton, PA 18201

Re:   Service Electric Cablevision, Inc.

Dear Mayor Barletta and Members of City Council:

This letter is prompted by your consideration of an Agreement which, if adopted, would breach the exclusivity provision of the City's 1987 Ordinance/Agreement with Service Electric.

I have represented Service Electric Cablevision and its predecessors for some 45 years and was actively engaged in the negotiations that led to the passage of the 1987 Franchise. I feel that it is necessary to provide you with my distinct recollection of those negotiations.

There were those who opposed the inclusion of the exclusivity provisions. My clients noted that fiber optic cable would soon be at the cutting edge of providing cable service. Clearer pictures and many more channels would be the result. To make this kind of investment in the more than 100 miles of streets of Hazleton would be fool hardy if the cable company was not granted exclusivity. Members of Council saw both the wisdom

LAPUTKA, BAYLESS, ECKER & COHN
A PROFESSIONAL CORPORATION

February 26, 2004
Page 2

Mayor Louis Barletta
Mrs. Evelyn Graham
Mr. Joseph Yannuzzi
Mr. Robert Nilles
Mr. Jack Mundie
Mr. James Ferry

**Re:   Service Electric Cablevision, Inc.**

and fairness of that argument and the Ordinance, with that provision included, passed.

Since that time, Service Electric has continued to invest heavily in Hazleton and the area. It has upgraded the system in many ways, so much so that our customer satisfaction is very high. My client employs 27 local people, spends countless dollars in the community and provides state-of-the-art cable services at most reasonable rates.

This is not the place to argue the legal impropriety of what is being considered. That probably will have to take place in another forum. I do argue, however, that in a country of laws, contracts such as this one are expected to be honored. I hope that each of you will agree with me when considering the proposed resolution.

I await your response.

Sincerely,

LAPUTKA, BAYLESS, ECKER & COHN, P.C.

Martin D. Cohn

MDC:ljd

# EXHIBIT F

## RESOLUTION 2004-27

## RESOLUTION AMENDING RESOLUTION 2004-10 – AUTHORIZING THE CITY OF HAZLETON TO ENTER INTO A NON-EXCLUSIVE CABLE FRANCHISE AGREEMENT BETWEEN THE CITY OF HAZLETON AND NUNET, INC.

**WHEREAS,** the City of Hazleton and NUNET, INC. wish to enter into cable services by NuNet, Inc. to the residence of the City of Hazleton; and

**WHEREAS,** the said Lease is for a period of eight (8) years commencing the date of the execution of the Franchise Agreement, and may be extended two times each for a six (6) year period of time, subject to the City's review and acceptance of the same; and

**NOW THEREFORE, BE IT RESOLVED** by the Council of the City of Hazleton that the Mayor is authorized to execute the aforementioned Cable Franchise Agreement on behalf of the City of Hazleton.

**ADOPTED BY COUNCIL** this 11th day of March 2004.

|  |  |
|---|---|
| Presented by | Graham |
| Seconded by | Ferry |
| Ferry | Y |
| Graham | Y |
| Mundie | Y |
| Nilles | Y |
| Yannuzzi | Y |

## RESOLUTION PASSES 3/11/04