IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SERVICE ELECTRIC CABLEVISION, INC., | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 04-CV-622 |
| v. | ) | (Judge A. Richard Caputo) |
| | ) | |
| THE CITY OF HAZLETON, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## STATEMENT OF UNDISPUTED MATERIAL FACTS
## IN SUPPORT OF PLAINTIFF'S MOTION FOR
## <u>SUMMARY JUDGMENT AND PERMANENT INJUNCTION</u>

Glen R. Stuart
David B. MacGregor
Kenneth M. Kulak
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA  19103-2921
Tel: (215) 963-5883

Counsel for Plaintiff

Robert S. Sensky
Bruce S. Miller
John M. Gallagher
Laputka, Bayless, Ecker & Cohn, P.C.
2 East Broad Street, 6th Floor
Hazleton, PA 18201
Tel: (570) 455-4731

Date:  December 22, 2004

1.    Service Electric is a Pennsylvania corporation that operates a cable television system within the municipal boundaries of Hazleton.  *See* Affidavit of Hoyt Walter, ¶¶ 2-3 ("Walter Affidavit") (attached as "Attachment 1").

2.    On September 14, 1987, Hazleton enacted Ordinance No. 87-22, granting an exclusive franchise to Service Electric to operate a cable television system in Hazleton.  Walter Affidavit, ¶ 5 & Exhibit A (the "1987 Ordinance" or "Contract").

3.    The 1987 Ordinance provides:

> Having determined that the Company, through its System, has afforded significant social, educational and entertainment benefits to the public in the Municipality, *the Company has provided a high quality of such service, responsive to the needs and desires of residents of the Municipality, and such service can best be assured by the granting of an exclusive franchise to the Company*; and that the Company has the legal, character, financial, technical and other qualifications to continue to construct, erect, own, operate and maintain the cable television system serving this Municipality, *the Municipality hereby grants unto the Company the exclusive right and privilege* to construct, erect, operate and maintain a cable television system in, under, over, along, across or upon the public streets, highways, sidewalks, rights-of-way and places within the boundaries of the Municipality; to the extent permitted by law.

1987 Ordinance, § 4 (emphasis added).

4.    Section 6 of the 1987 Ordinance further provides that "[w]hen this Ordinance shall have been accepted by the Company, such Ordinance and acceptance shall constitute a contract between [Hazleton] and [Service Electric] for all the uses, services, and purposes set forth in this Ordinance." *Id.*, § 6.

1

5.      Service Electric accepted the 1987 Ordinance, and the 1987 Ordinance became a contract between Service Electric and Hazleton, which remains effective. *See* Walter Affidavit, ¶¶ 6 & 8.

6.      Service Electric made substantial investments in reliance upon the exclusiveness of the franchise granted by Hazleton, and as a result its cable system in Hazleton is now worth in excess of $13 million and generates more than $312,000 in monthly revenues. Walter Affidavit, ¶ 9. In accordance with the 1987 Ordinance, Service Electric pays a portion of its gross revenues to Hazleton as a franchise fee. *Id.* Service Electric presently offers extensive cable television packages as well as high-speed internet access. *Id.* Nevertheless, on May 27, 2004, Hazleton granted a non-exclusive franchise to operate a cable television system in Hazleton to NuNet. Walter Affidavit, ¶ 14.

7.      Service Electric will be irreparably injured through loss of good will, customers and profits if Hazleton does not honor its award of an exclusive franchise to Service Electric. *Id.*, ¶¶ 16.

                              Respectfully submitted,


                              /s/ Glen R. Stuart
                              Glen R. Stuart
                              David B. MacGregor
                              Kenneth M. Kulak
                              Morgan, Lewis & Bockius LLP
                              1701 Market Street
                              Philadelphia, PA  19103-2921
                              Voice:  215.963.5000
                              Fax:  877.432.9652
                              E-mail:  gstuart@morganlewis.com

Robert S. Sensky
Bruce S. Miller
John M. Gallagher
Laputka, Bayless, Ecker & Cohn, P.C.
2 East Broad Street, 6th Floor
Hazleton, PA 18201
Voice: 570.455.4731
Fax:    570.459.0729
E-mail: rssensky@lbec-law.com

Dated: December 22, 2004

# ATTACHMENT 1

# WALTER AFFIDAVIT

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SERVICE ELECTRIC CABLEVISION, INC., )<br><br>Plaintiff, )<br><br>v. )<br><br>THE CITY OF HAZLETON, )<br><br>Defendant. ) | Civil Action No. <u>04-CV-622</u><br>(Judge A. Richard Caputo) |

## AFFIDAVIT OF HOYT WALTER

I, Hoyt Walter, under the penalty of perjury, state that the facts contained herein are true
and correct to the best of my knowledge and belief:

1.      I am president of Service Electric Cablevision, Inc. ("Service Electric"), and have
served in this capacity for 13 years.

2.      Service Electric is a Pennsylvania corporation that provides residential and
commercial cable television, data and Internet services to over 86,000 subscribers in one hundred
communities in Pennsylvania.  Service Electric is a successor in interest to Service Electric
Cable T.V., Inc, and all references to Service Electric in my Affidavit incorporate the actions of
Service Electric Cable T.V., Inc.

3.      Service Electric has operated a cable television system in the City of Hazleton ("Hazleton") since 1963.

4.      At the time of the 1987 negotiations, Service Electric and Hazleton were engaged in a dispute regarding the amount of franchise fees due Hazleton under a prior ordinance to provide cable television service in Hazleton.

5.      As a result of these negotiations, and as a condition of resolving the dispute between Service Electric and Hazleton, Hazleton enacted a new ordinance granting an exclusive franchise to Service Electric to operate a cable television system in Hazleton and assessing Service Electric a 5% franchise fee.  A copy of the ordinance is attached as Exhibit A to my Affidavit.

6.      Service Electric was required to provide a written notice of acceptance of the terms of the ordinance within thirty days for the ordinance to become a contract (the "Contract"). A copy of the timely acceptance sent to Hazleton is attached as Exhibit B.

7.      The Contract granted Service Electric an exclusive franchise to operate a cable television system in the municipality of Hazleton and pay a 5% franchise fee.

8.      Section 5 of the Contract also provided:

Section 5. FRANCHISE TERM.

This grant shall be for a period of seventeen (17) years from January 1, 1988 and ending on December 31, 2005, with the option to renew same for additional fifteen (15) year term.  Exercise of the Company's option shall be governed by the procedures, rights and remedies provided in Section 624 of the Communications Act of 1034, 47 U.S.C. Section 151, et seq., as amended by the Cable Communications Policy Act of 1984, Pub. L. 98-549, and as it may subsequently be amended.

9.      Service Electric has made substantial investments in its plant and operations in Hazleton in reliance upon its exclusive contract with Hazleton, and presently offers extensive cable television packages as well as high-speed internet access.  Service Electric's system in Hazleton is worth well in excess of $13 million, and generates more than $312,000 per month in revenues.  In accordance with the 1987 Ordinance, Service Electric pays a portion of its gross revenues to Hazleton as a franchise fee.

10.     On January 15, 2004, Hazleton enacted Resolution 2004-10 purporting to authorize a cable franchise agreement with NuNet ("NuNet Resolution I").  A true and correct copy of NuNet Resolution I is attached as Exhibit C.

11.     Martin D. Cohn, Esq., counsel to Service Electric since at least 1987, wrote to Hazleton officials and emphasized the importance of the exclusivity provision in the Contract to Service Electric's decision to invest the funds and resources necessary to construct, maintain and operate a cable television system and subsequent upgrades thereto.  A true and correct copy of Mr. Cohn's February 26, 2004 letter is attached as Exhibit D.

12.     On March 11, 2004, the Hazleton City Council enacted Resolution 2004-27 ("NuNet Resolution II") purporting to authorize Hazleton to enter into a non-exclusive cable franchise agreement with NuNet.  A true and correct copy of NuNet Resolution II is attached as Exhibit E.

13.     Because Hazleton refused to honor its exclusive franchise with Service Electric, I directed counsel to file a complaint in the United States District Court for the Middle District of Pennsylvania on March 23, 2004.

3

14.     On May 27, 2004, Hazleton enacted an ordinance granting a non-exclusive franchise to NuNet.  A true and correct copy of the ordinance is attached as Exhibit F.

15.     In published reports, NuNet has projected that it will enroll 14,000 customers in Hazleton in the "first stage" of its development.  *See* Exhibit G.  Service Electric currently has over 6700 customers in Hazleton.  Because Hazleton has a population of approximately 23,000 people, NuNet is clearly projecting that it will cause Service Electric to lose thousands of customers and jeopardize Service Electric's substantial investment.

16.     Service Electric will be irreparably injured in loss of good will, customers, and profits if it loses its exclusive franchise rights granted by Hazleton.

Executed on December 22, 2004, Allentown, Pennsylvania.

_____

HOYT WALTER

Sworn to and subscribed
before me this 22nd day
of December, 2004.

_____(SEAL)
NOTARY PUBLIC

4

# EXHIBIT A

666

AN ORDINANCE NO. 87-21

AMENDING ORDINANCE NO. 86-30 RE-ENACTING ORDINANCE
NO. 87-27 KNOWN AS THE LERTA ORDINANCE

BE IT ORDAINED by the Council of the City of Hazleton, Pennsylvania that
Ordinance No. 86-30 is made retroactive to December 31, 1982.

Passed finally by Council this 14th day of September, A.D., 1987

_____
                                    MAYOR

Attest:

_____
       CITY CLERK

AN ORDINANCE NO. 87-22
_____

AN ORDINANCE REQUIRING THAT THE PROVIDING OF CABLE
TELEVISION SERVICE BE AUTHORIZED BY FRANCHISE; GRANTING
A FRANCHISE TO SERVICE ELECTRIC CABLE T.V., INC. A
PENNSYLVANIA CORPORATION, ITS SUCCESSORS AND ASSIGNS,
TO INSTALL, OPERATE AND MAINTAIN A CABLE TELEVISION SYSTEM:
PRESCRIBING TERMS AND CONDITIONS: ALSO PROVIDING
REGULATIONS FOR USE OF THE SYSTEM: AND OTHER LEGAL REQUIREMENTS

BE IT ENACTED AND ORDAINED, AND IT IS HEREBY ENACTED AND OREAINED, AS FOLLOWS:

SECTION 1.   SHORT TITLE

This Ordinance shall be known and may be cited as the "Cable Television
Franchise Ordinance."

SECTION 2.   DEFINITIONS

For the purposes of this Ordinance, the following terms, phrases, words and
their derivations shall have the meaning given herein.  When not inconsistent
with the context, words used in the present tense include the future, words
in the plural number include the singular number, words in the singular number
include the plural number, words in the singular number include the plural
number, and words in the masculine gender shall include the feminine gender.
The word "shall" is always mandatory and not merely directory.

(a)  "Municipality" is the City of Hazleton, acting through its duly
constituted governing body.

(b)  "Cable Television System" or "System" shall mean any facility or group
of facilities which, in whole or in part, receives, modifies or originates
television, FM radio or other electrical signals for the purpose of transmitting
or distributing such signals by wire, cable or other means to subscribing
members of the public or to selected customers, as herein contemplated.  This
definition shall include those systems which do not occupy or cross over or
under the public ways and places of Municipality.

(c)  "Company" is Service Electric Cable T.V., Inc. its successors and assigns.

(d)  "Person" is any person, firm, partnership, association, corporation,
company or organization of any kind.

SECTION 3.  <u>FRANCISE REQUIRED</u>

From and after the enactment of this Ordinance, no cable television system shall be constructed, installed or operated in the Municipality unless such construction, installation or operation shall first have been authorized by Ordinance of Municipality duly enacted.

SECTION 4.  <u>GRANT OF AUTHORITY</u>

Having determined that the Compnay, through its System, has afforded significant social, educational and entertainment benefits to the public in the Municipality, the Company has provided a high quality of such service, responsive to the needs and desires of residents of the Municipality, and such service can best be assured by the granting of an exclusive franchise to the Company; and that Company has the legal, character, financial, technical and other qualifications to continue to construct, erect, own, operate and maintain the cable television system serving this Municipality, the Municipality hereby grants unto the Company the exclusive right and privilege to construct, erect, operate and maintain a cable television system in, under, over, along, across or upon the public streets, highways, sidewalks, rights-of-way and places within the boundaries of the Municipality; to the extent permitted by law.  Municipality grants Company permission to attach or otherwise affix or install its cables and other equipment to and in the facilities of any public utility even though the same may occupy or cross over or under the public ways and places of Municipality; provided that any requisite permission or consent of such public utility is obtained by Company.

SECTION 5.  <u>FRANCHISE TERM</u>

This grant shall be for a period of seventeen (17) years from January 1, 1988 and ending on December 31, 2005, with the option to renew same for additional fifteen (15) year term.  Exercise of Company's option shall be governed by the procedures, rights and remedies provided in Section 624 of the Communications Act of 1034, 47 U.S.C. Section 151, et seq., as amended by the Cable Communications Policy Act of 1984, Pub. L. 98-549, and as it subsequently may be amended.

SECTION 6.  <u>ACCEPTANCE OF FRANCISE</u>

This grant is made upon the express condition that the Company, within thirty (30) days after written notice is given to the Company that this Ordinance has taken effect and becomes operative, shall file with the City Clerk or other duly authorized official of the Municipality a written acceptance of the same.  When this Ordinance shall have been accepted by the Company, such Ordinance and acceptance shall constitute a contract between the Municipality and the Company for all the uses, services and purposes set forth in this Ordinance.  Except as may be otherwise provided by State or Federal law, order or regulation, the rights and obligations of Municipality and Company shall be those specified herein and shall not be enlarged, diminished or altered by unilateral action of Municipality during the term of the franchise or renewal thereof.  The Company, by its acceptance of the provisions of this Ordinance, binds itself to provide the necessary cable television system and to establish, operate and maintain the local cable television system contemplated in this Ordinance, continuing without substantial interruption except for causes beyond its control until the expiration of the term of this grant.  In the event that said Company fails to file said written acceptance within the time hereinablove specified, this grant shall be of no effect and void.

SECTION 7.  <u>INSTALLATION AND EXTENSION OF SYSTEM</u>

Company shall serve all residents of Municipality except to the extent that low household density, adverse terrain or other factors render providing service impracticable or technically or economically infeasible.  Company's cable television system shall not be required to be installed in, or extend to, areas of Municipality where potential revenues from subscribers to be served therein would produce a return insufficient to justify economically such installation or extension.  If otherwise practicable and technically feasible:

(a)  Service shall be provided at normal installation and monthly service rates to an individual customer whose point of connection is  located within one hundred fifty (150) feet of in-place distribution cable;

668

(b)  Company, at its cost, shall make an extension of its cable system where the number of existing households per linear mile of cable to be passed by the extension equals or exceeds the average number of households passed per linear mile of existing cable plant within Municipality.

(c)  In no event shall Company be required to make an extension where the number of existing households to be passed per miles is less than fifty (50).  Nor shall Company be required to install or extend its cable system in areas where it cannot obtain necessary rights-of-way over private property at economically feasible cost, or permission to attach its facilities to public utility poles or conduits.

SECTION 8.  <u>REGULATORY ACTION</u>

The performance by the Company hereunder is subject to limitations, restrictions, or requirements now existing or which may henceforth be imposed by law, rule, or order of the Federal Communications Commission or other government, board, commission or authority.  The Company shall not be deemed in default of any of the requirements of this Ordinance to the extent it acts in compliance with, or refrains from doing anything prohibited by such law, rule or order.

SECTION 9.  <u>CONDITION OF STREET OCCUPANCY</u>

(a)  All transmission and distribution structures, lines and equipment erected by the Company within the Municipality shall be so located as to cause minimum feasible interference with the proper use of streets, alleys and other public ways, roads and places, and to cause minimum feasible interference with the rights or reasonable convenience of property owners who adjoin any of the said streets, alleys or other public ways, roads and places.  The Company shall obtain any required permits prior to construction.

(b)  In case of any disturbance of pavement, sidewalk, driveway or other surfacing by Company, Company shall, at its expense and in a manner approved by the Municipality, replace and restore the same in as good condition as before said work was commenced.

SECTION 10.  <u>COMPLIANCE WITH STANDARDS</u>

Company's construction and maintenance of the transmission and distribution system shall be in accordance with applicable  state and federal laws or regulations now in effect or later enacted regulating or affecting Company's installation or operation.

SECTION 11.  <u>COMPANY LIABILITY - INDEMNIFICATION</u>

The Company shall save the Municipality harmless from all loss sustained on account of any suit, judgment, execution, claim or demand whatsoever, resulting solely from the operation of the Company in the construction, operation or maintenance of its system in the Municipality.  The Municipality shall notify the Company within ten (10) days after the presentation of any claim or demand, either by suit or otherwise, made against the Municipality on account of any damages or losses as aforesaid resulting from the operations of the Company.  Thirty (30) days from the enactment date of this Ordinance, the Company shall furnish satisfactory evidence in writing that it has in force public liability insurance of not less than $250,000.00 for any one person and $500,000.00 for any one accidnet, and property damage insurance of not less than $250,000.00 duly issued by an insurance company or insurance companies authorized to do business in this Commonwealth.

SECTION 12.  <u>LANDLORD - TENANT</u>

(a)  No landlord shall demand payment from Company for permitting Company to provide cable television service on or within said landlord's property or premises.  Provided, however, that such landlord may be entitled to reasonable reimbursement for any direct expenses incurred by him in connection with the installation of cable television service, and to just compensation for any permanent occupation of his property resulting from the installation of Company's facilities therein.

(b)  No landlored shall interfere with the installation of cable television facilities upon his property or premises nor shall such landlord discriminate in rental charges, or otherwise, between tenants who receive cable service and those who

do not.  No landlord shall demand or accept payment from any tenant, in any form, for permitting cable television service on or within his property or premises.

(c)  As used in this Section, the term "landlord" means any individual or entity owning, controlling, leasing, operating or managing leased residential premises.

SECTION 13.  FRANCHISE PAYMENTS

Beginning on January 1, 1988, as compensation for the rights conferred upon it by this Ordinance, including the privilege of engaging in the business of operating a cable television system in Municipality, Company shall pay annually to Municipality a fee equal to five percent (5%) of both gross revenues collected by Company from charges for basic cable television service and for optional cable television service rendered to subscrubers within Municipality.

"Gross revenues" shall not include charges for or revenues from: any taxes billed to and collected from subscribers; services other than the transmission and distribution of television signals; advertising payments; the leasing of cable channels; furnishing other communications and non-broadcast television services either directly or as a carrier for another party; installation charges and fees for move, reconnections, inspection, repairs or modifications of any installations, any other income derived by the Company.  Payment of such annual fee shall be made not later than March 31 of the year following the calendar year in which the fee accrues.  Except for the presently existing Business Privilege Tax imposed by Municipality, such annual fee shall be reduced by the amount of any tax, assessment, fee or other charge imposed, levied made or collected by Municipality upon or from Company for the privilege of engaging in the business of operating a cable television system in Municipality.

"Basic cable television service" shall mean that tier of cable television service to which all users must subscribe in order to obtain cable television service and for which a charge is made.

"Optional cable television service" shall mean the furnishing of television programming for which a per-channel or per-program charge is made additional to that for basic cable television service.

The Company shall send to the City Clerk within thirty (30) days after the close of each quarter, a statement certified by an officer of the Company, with the precise number of subscribers as at the end of the preceding quarter for both basic cable television and optional cable television service.

SECTION 14.  PUBLICATION COSTS

The Company shall assume the cost of publication of this Ordinance as such publication is required by law and shall pay the same upon demand by the Municipality.

SECTION 15.  SEPARABILITY

If any section, subsection, sentence, clause, phrase or portion of this Ordinance, is for any reason held illegal, invalid or unconstitutional by any Court of competent jurisdiction or by any state or federal regulatory agency having jurisdiction, such portion shall be deemed a separate, distinct and independent provision and such holding shall not affect the validity of the remaining portions of this Ordinance.

SECTION 16.  ORDINANCES REPEALED

The following Ordinances are hereby repealed.  Ordinance Nos. 1838 adopted February 28, 1966; 1853 adopted December 30, 1966 and 1958 adopted November 23, 1970.

SECTION 17.  ENACTMENT

The effective date of this Ordinance shall be January 1, 1988.  This Ordinance is hereby duly executed and order into law this      day of September, 1987.

Passed finally by Council this 14th day of September, A.D., 1987

_____
MAYOR

Attest:

_____
CITY CLERK

# EXHIBIT B

02/09/04   14:51   ☎6104328262        S E C V                                      ☑002

RECEIVED OCT - 9 1987

LAW OFFICES OF

## LAPUTKA, BAYLESS, ECKER & COHN
### A PROFESSIONAL CORPORATION

BARTEL E. ECKER
MARTIN D. COHN
BRUCE S. MILLER
BART E. ECKER
THOMAS L. KENNEDY
THEODORE R. LAPUTKA, JR.
CHARLES R. PEDRI
ANDREW J. PRIMERANO

SIXTH FLOOR
FIRST VALLEY BUILDING
HAZLETON, PENNSYLVANIA 18201
455 4731   AREA CODE 717
TELEFAX! 717-459-0728

OF COUNSEL
THEODORE R. LAPUTKA, SR.
KENNETH R. BAYLESS

October 8, 1987

Honorable Ralph N. Catino
City Clerk
City of Hazleton
Church and Green Streets
Hazleton, PA   18201

Re:  Service Electric Cable TV Ordinance No. 87-22

Dear Ralph:

This will acknowledge receipt of your letter of October 6, 1987, and the certified copy of the above Ordinance.

In accordance with Section 6 of the Ordinance, please regard this letter as the written acceptance of the Ordinance for and on behalf of Service Electric.

As requested in your letter, this is to inform you that Service Electric will provide the subscribers in the City of Hazleton with the same quality and quantity of service as provided in other communities served by our system, such as Allentown.

I will be back in touch with you within the next several days to arrange a meeting with the Mayor and you so that I might receive a fully executed copy of the side agreement terminating the litigation and the presentation to you of the check of $70,000.00.

Sincerely,

LAPUTKA, BAYLESS, ECKER & COHN, P.C.

Martin D. Cohn

MDC:mnp
cc:  Mr. Hoyt D. Walter

# EXHIBIT C

### RESOLUTION 2004-10
### (As Amended)

## RESOLUTION AUTHORIZING THE CITY OF HAZLETON TO ENTER INTO A <u>NON-EXCLUSIVE</u>[1] CABLE FRANCHISE AGREEMENT BETWEEN THE CITY OF HAZLETON AND NUNET, INC.

**WHEREAS,** the City of Hazleton and NUNET, INC. wish to enter into cable services by NuNet, Inc. to the residence of the City of Hazleton; and

**WHEREAS,** the said Lease is for a period of eight (8) years commencing the date of the execution of the Franchise Agreement, and may be extended two times each for a six (6) year period of time, subject to the City's review and acceptance of the same; and

**NOW THEREFORE, BE IT RESOLVED** by the Council of the City of Hazleton that the Mayor is authorized to execute the aforementioned Cable Franchise Agreement on behalf of the City of Hazleton.

**ADOPTED BY COUNCIL** this 15th day of January 2003.

|  |  |
|---|---|
| Presented by | Ferry |
| Seconded by | Graham |
| Ferry | Y |
| Graham | Y |
| Mundie | Y |
| Nilles | Y |
| Yannuzzi | Y |

## RESOLUTION PASSES 1/15/04

---

[1] Amended to add the words **"Non-Exclusive"** to the title.

# EXHIBIT D

LAW OFFICES OF

**LAPUTKA, BAYLESS, ECKER & COHN**

A PROFESSIONAL CORPORATION

2 EAST BROAD STREET

SIXTH FLOOR

HAZLETON, PENNSYLVANIA 18201-6592

(570) 455-4731

FAX (570) 459-0729

E-mail: info@lbec-law.com

MARTIN D. COHN
BRUCE S. MILLER
BART E. ECKER
ROBERT S. SENSKY
JOHN M. GALLAGHER
JEFFREY C. MAJIKAS
TIMOTHY D. BELT

THEODORE R. LAPUTKA, SR. (RET.)

KENNETH R. BAYLESS
(1920-1994)
BARTEL E. ECKER
(1913-1997)

E-mail: mdcohn@lbec-law.com

February 26, 2004

Mayor Louis Barletta
City Hall
40 North Church Street
Hazleton, PA 18201

Mrs. Evelyn Graham
Mr. Joseph Yannuzzi
Mr. Robert Nilles
Mr. Jack Mundie
Mr. James Ferry
City Hall
40 North Church Street
Hazleton, PA 18201

Re:   Service Electric Cablevision, Inc.

Dear Mayor Barletta and Members of City Council:

This letter is prompted by your consideration of an Agreement which, if adopted, would breach the exclusivity provision of the City's 1987 Ordinance/Agreement with Service Electric.

I have represented Service Electric Cablevision and its predecessors for some 45 years and was actively engaged in the negotiations that led to the passage of the 1987 Franchise. I feel that it is necessary to provide you with my distinct recollection of those negotiations.

There were those who opposed the inclusion of the exclusivity provisions. My clients noted that fiber optic cable would soon be at the cutting edge of providing cable service. Clearer pictures and many more channels would be the result. To make this kind of investment in the more than 100 miles of streets of Hazleton would be fool hardy if the cable company was not granted exclusivity. Members of Council saw both the wisdom

LAPUTKA, BAYLESS, ECKER & COHN
A PROFESSIONAL CORPORATION

February 26, 2004
Page 2

Mayor Louis Barletta
Mrs. Evelyn Graham
Mr. Joseph Yannuzzi
Mr. Robert Nilles
Mr. Jack Mundie
Mr. James Ferry

Re:   Service Electric Cablevision, Inc.

and fairness of that argument and the Ordinance, with that provision included, passed.

Since that time, Service Electric has continued to invest heavily in Hazleton and the area. It has upgraded the system in many ways, so much so that our customer satisfaction is very high. My client employs 27 local people, spends countless dollars in the community and provides state-of-the-art cable services at most reasonable rates.

This is not the place to argue the legal impropriety of what is being considered. That probably will have to take place in another forum. I do argue, however, that in a country of laws, contracts such as this one are expected to be honored. I hope that each of you will agree with me when considering the proposed resolution.

I await your response.

Sincerely,

LAPUTKA, BAYLESS, ECKER & COHN, P.C.

Martin D. Cohn

MDC:ljd

# EXHIBIT F

## RESOLUTION 2004-27

## RESOLUTION AMENDING RESOLUTION 2004-10 – AUTHORIZING THE CITY OF HAZLETON TO ENTER INTO A NON-EXCLUSIVE CABLE FRANCHISE AGREEMENT BETWEEN THE CITY OF HAZLETON AND NUNET, INC.

**WHEREAS,** the City of Hazleton and NUNET, INC. wish to enter into cable services by NuNet, Inc. to the residence of the City of Hazleton; and

**WHEREAS,** the said Lease is for a period of eight (8) years commencing the date of the execution of the Franchise Agreement, and may be extended two times each for a six (6) year period of time, subject to the City's review and acceptance of the same; and

**NOW THEREFORE, BE IT RESOLVED** by the Council of the City of Hazleton that the Mayor is authorized to execute the aforementioned Cable Franchise Agreement on behalf of the City of Hazleton.

**ADOPTED BY COUNCIL** this 11th day of March 2004.

|  |  |
|---|---|
| Presented by | Graham |
| Seconded by | Ferry |
| Ferry | Y |
| Graham | Y |
| Mundie | Y |
| Nilles | Y |
| Yannuzzi | Y |

## RESOLUTION PASSES 3/11/04

# EXHIBIT E

# CITY OF HAZLETON

## ORDINANCE 2004-12

*Approving "Cable Franchise Agreement Between The City Of Hazleton And NuNet, Inc.",
Dated March 29, 2004, And Granting A Non-Exclusive And Revocable Franchise To
Construct, Operate And Maintain A Cable System In The City Of Hazleton, Luzerne County,
Pennsylvania, Subject To The Terms And Conditions Set Forth In The "Cable Franchise
Agreement Between The City Of Hazleton And NuNet, Inc.", Dated March 29, 2004,  To
Nunet, Inc.*

**WHEREAS,**  pursuant to the Cable Communications Policy Act of 1984, the Cable Television
Consumer Protection and Competition Act of 1992, and the Telecommunications Act of 1996
(hereinafter collectively referred to as "Cable Act"), the regulations of the Federal
Communications Commission (hereinafter referred to as "FCC") and Pennsylvania Law, the City
of Hazleton, a municipality located in Luzerne County, Pennsylvania (hereinafter referred to as
the "City") is authorized to grant franchises to construct, operate and maintain a Cable System
utilizing public rights-of-way and properties within the City's jurisdiction; and

**WHEREAS,**  NuNet, Inc. (hereinafter referred to as "NuNet"), has requested that the City grant
it a franchise to construct, operate and maintain a Cable System over, under and along the
aforesaid rights-of-ways for use by the City's residents; and

**WHEREAS,**  the aforesaid rights-of-way are public properties acquired and maintained by the
City at significant expense to the City's taxpayers and the right to use said rights-of-way is a
valuable property right; and

**WHEREAS,**  the City desires to protect and manage the aforesaid rights-of-way, require high
standards of customer service, ensure future technical improvements to maintain a state-of-the-
art Cable System, obtain complimentary services for its public buildings, receive financial
compensation for NuNet's use of the City's rights-of-ways as provided by federal law, establish
certain reporting requirements and provide for the current and future cable-related needs of its
residents; and

**WHEREAS,**  Section 621 of the Cable Act provides that a municipality may award one or more
cable franchises within its jurisdiction to a cable operator or operators and that such municipality
may not award an exclusive franchise; and

**WHEREAS,**  the City has determined that NuNet has the financial, legal and technical ability to
provide Cable Services to Subscribers located in the City; and

**WHEREAS,**  the City has determined that the public interest would be served by granting a
franchise to NuNet, thereby authorizing it to operate its Cable System according to the terms and
conditions of "Cable Franchise Agreement Between The City Of Hazleton And NuNet, Inc.",
dated March 29, 2004, which is incorporated herein by reference, and attached hereto, and made
a part hereof (hereinafter the "Agreement"); and

**WHEREAS,** the City, by and through the Honorable Mayor Louis J. Barletta, and NuNet, by and through its CEO, John D. Keown, have each signed the Agreement intending to be bound thereby.

*NOW, THEREFORE, BE IT ORDAINED by the Council of the City of Hazleton that the Agreement is approved, and a non-exclusive and revocable franchise to construct, operate and maintain a Cable System in the Municipality subject to the terms and conditions set forth in the Agreement is hereby granted to NuNet.*

*BE IT ORDAINED AND ENACTED this 27th day of May 2004.*

| First Reading (May 13, 2004) | | Second Reading (May 27, 2004) | | Third Reading (May 27, 2004) | |
|---|---|---|---|---|---|
| Presented | Graham | Presented | Yannuzzi | Presented | Yannuzzi |
| Seconded | Yannuzzi | Seconded | Graham | Seconded | Graham |
| Ferry | Y | Ferry | Y | Ferry | Y |
| Graham | Y | Graham | Y | Graham | Y |
| Mundie | N | Mundie | Absent | Mundie | Absent |
| Nilles | N | Nilles | N | Nilles | N |
| Yannuzzi | Y | Yannuzzi | Y | Yannuzzi | Y |

**ORDINANCE PASSES 5/27/04**

# EXHIBIT F

Morning Call (Allentown, PA) January 16, 2004 Friday

Copyright 2004 The Morning Call, Inc.
Morning Call (Allentown, PA)

January 16, 2004 Friday EIGHTH EDITION

**SECTION:** NATIONAL, Pg. A1

**LENGTH:** 997 words

**HEADLINE:** Fiber optics headed to Hazleton;
Upper Macungie Twp. company will launch the $18 million project.

**BYLINE:** By Jeanne Bonner Of The Morning Call

**DATELINE:** HAZLETON

**BODY:**

Want super-fast Internet access? Want high-definition digital television? Want a video phone?

Move here.

This small Luzerne County city will soon be completely wired with a fiber-optic network that will provide enough high-speed bandwidth for all of the above technologies and then some. That will make Hazleton only the second community in the state, after Kutztown, and the 36th in the nation to go fiber.

An Upper Macungie Township company that provides Internet service is spearheading the $18 million project.

NuNet announced Thursday it will begin laying fiber-optic cable in Hazleton in February and hopes to fully wire the city by the end of this year. Founded in 1996, NuNet has more than 20,000 Internet customers in the Lehigh Valley and surrounding areas.

NuNet President John Keown is hoping to sign up 14,000 residential and 2,000 business customers in Hazleton in the first phase of the project. That's ambitious considering the city has about 23,000 residents.

The company picked Hazleton because it is a third-tier market that is "off the beaten track," Keown said. The company also is locating its Hazleton offices in a Keystone Opportunity Expansion Zone, where most businesses receive discounts on leases and pay no municipal or state taxes for 10 years.

This is not NuNet's first venture in Hazleton. In 2001, the company bought Intergrafix, a Hazleton area Internet service provider. NuNet has made a career of acquiring smaller ISPs.

Kutztown is the only other community in the state that is completely wired with fiber-optic cable. Kutztown's 5,000 residents can receive telephone, Internet and cable TV service through the municipal system. The $4.6 million fiber-optic network was completed in 2002.

Fiber optics has long been hailed as the future of communications. In the Lehigh Valley, thousands of people once worked at Agere Systems and other companies making components for fiber-optic networks.

A fiber-optic network converts electrical signals from phone conversations and Internet data to beams of light that travel at millions of bits per second over tiny strands of glass. That compares to 56,000 bits per second through dialup connections.

The faster speed provides quicker Internet connections, crisper television pictures and cleaner audio.

But it is unclear how much market demand there is for super-fast high-speed Internet and high-definition television in Hazleton.

The former lumber and coal town is not exactly a center for cutting-edge technology companies. It has lost half its population since 1940. And its median income of $28,082, based on the 2000 Census, is 30 percent below the state average of $40,106.

The largest employers are Hershey Foods, whose nearby Humboldt Industrial Park plant makes the Cadbury line of chocolates, and Excel, a meat distributor. Some residents interviewed Thursday said Tyson, the chicken giant, is coming to the area, but an economic development official said that's an old rumor that just won't die.

A local wedding photographer who didn't want to give his name seemed not to believe that fiber-optics was coming to Hazleton. "It's pretty backward here," he said.

Like Allentown, Hazleton has been trying to attract businesses to its struggling downtown. Broad Street, the main drag, is still fairly bustling with people and businesses. But the landmark 93-year-old Markle Building, which will be home to NuNet's Hazleton operation, reached such a point of decay three years ago that it was almost demolished, officials said.

"It was kind of desolate for a while," said W. Kevin O'Donnell, president of CAN DO, an economic development organization.

NuNet does not enter a vacuum. Hazleton residents can get high-speed Internet access from PenTeleData, which offers ProLog Internet in conjunction with cable company Service Electric. Digital Subscriber Line, high-speed Internet service over telephone lines, is also available.

And many Hazleton residents, like their counterparts in the Lehigh Valley, opt for the slower but cheaper dialup Internet connection that uses ordinary telephone lines.

NuNet is pushing a bundle package of services that will include digital television, phone service and Internet access priced from $80 to $180 a month.

Many people interviewed in Hazleton said they would switch service only if fiber technology is cheaper.

"I don't know what the advantage is to high-speed," said Carmen DeLese, who owns Carmen's Bakery and Deli on Broad Street. His wife, Marie, uses cable modem to log onto the Internet at home. It works fine and costs about $20 a month, she said. The couple likes to look online for recipes or machinery parts for the business.

This satisfaction with cable modem was echoed by a tattoo artist at Mark's Tattoo Parlor across the street from Carmen's

"When I click, the page is there," he said, identifying himself only as John.

Those involved in the fiber-optic project, however, are excited.

"Other areas would die for this," said George Hayden, who owns the Markle Building.

NuNet's network will be built in four phases. The epicenter of the project is the Markle Building, where the first strands of fiber will be laid. Those strands will connect to a series of hubs throughout the city.

NuNet's new division, NuNet Fiber Technologies, will open an office there and hire 35 people from the Hazleton area.

Keown said the company will have to borrow some money for the Hazleton project. He hopes other funds will flow in from the first customers.

"Everybody wants it, but they don't know it," Keown said.He will be bringing a menu of services to Hazleton that he can't enjoy at his home in Hellertown. Hazleton, he said, is "a very progressive town."

jeanne.bonner@mcall.com

610-820-6539

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SERVICE ELECTRIC CABLEVISION, INC., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> THE CITY OF HAZLETON, ) <br> ) <br> Defendant. ) <br> ) | Civil Action No. <u>04-CV-622</u> <br> (Judge A. Richard Caputo) |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this 22nd day of December 2004, the foregoing **Statement of**

**Undisputed Material Facts In Support Of Plaintiff's Motion For Summary Judgment and**

**Permanent Injunction,** was served upon the following by using the ECF system and that the

following is an ECF user:

Conrad A. Falvello
The Falvello Law Firm
782 West Butler Drive
Sugarloaf, PA 18249-3046

1

***First Class Mail***

Daniel S. Cohen
Stacy L. Browdie
Cohen Telecommunications Law Group
Two Gateway Center, 15th Floor
Pittsburgh, PA 15222


/s/ Glen R. Stuart
Glen R. Stuart
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103
Voice: 215.963.5883
Fax:    215.963.5001
E-mail: gstuart@morganlewis.com